```
                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF TEXAS
                        SHERMAN DIVISION


UNITED STATES OF AMERICA,  )         CRIMINAL
                           )
             Plaintiff,    )         Plano, Texas
                           )      Wednesday, June 29, 2016
      vs.                  )       (10:43 a.m. to 11:12 a.m.)
                           )
HABIBOOLA NIAMATALI,       ) CASE NO: 4:13-CR-00176-MAC-DDB-1
SHIRLEY NIAMATALI,         ) CASE NO: 4:13-CR-00176-MAC-DDB-2
                           )
             Defendants.   )
```

HEARING ON DEFENDANTS' JOINT MOTION FOR CONTINUANCE
OF PRETRIAL CONFERENCE AND TRIAL SCHEDULING AND
WAIVER OF SPEEDY TRIAL RIGHTS [DE #199]

BEFORE THE HONORABLE DON D. BUSH,
UNITED STATES MAGISTRATE JUDGE

| | |
|---|---|
| **APPEARANCES:** | See page 2 |
| Court Reporter: | Recorded; Digital |
| Courtroom Deputy: | Toya McEwen |
| Transcriber: | Exceptional Reporting Services, Inc.<br>P.O. Box 18668<br>Corpus Christi, TX 78480-8668<br>361 949-2988 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**

Plaintiff:                  G.R. JACKSON, ESQ.
                            U.S. Attorney's Office - Plano
                            101 East Park Blvd
                            Suite 500
                            Plano, TX 75074

Habiboola Niamatali:        THOMAS W. MILLS, JR., ESQ.
                            Mills & Williams
                            5910 N. Central Expressway
                            Premier Place, Suite 900
                            Dallas, TX 75206

Shirley Niamatali:          JIM BURNHAM, ESQ.
                            6116 N. Central Expressway
                            Suite 515
                            Dallas, TX 75206

**Plano, Texas; Wednesday, June 29, 2016; 10:43 a.m.**

**(Call to Order)**

**THE COURT:** All right. The first case is 4:13-CR-176.1 and 2, *United States of America versus Niamatali and Niamatali*, hearing on Defendants' joint motion to continue the pretrial conference and trial scheduling.

**MR. JACKSON:** And good morning, your Honor, Glen Jackson for the United States.

**THE COURT:** Mr. Jackson. Who's representing the Defendants in this case?

**MR. MILLS:** Tom Mills, I represent Dr. Niamatali.

**THE COURT:** Well, I mean, I -- are you going to talk all the way back there? Mr. Burnham, come on up.

Mr. Mills?

**MR. MILLS:** Judge, my name is Tom Mills and I represent Dr. Niamatali.

**MR. BURNHAM:** And I'm Jim Burnham and I represent Ms. Niamatali, your Honor.

**THE COURT:** Okay. So what's going on? Why do you need a continuance? Judge Crone has referred this to me to --

**MR. MILLS:** Yes, sir.

**THE COURT:** -- make a recommendation to her.

**MR. MILLS:** The issue has to do in my case with my client's health. He has bladder, prostate and bone cancer and he is -- and it is not in remission. He is not strong. He

1  also has a heart blockage that they're waiting for him to get
2  in good enough health to do open-heart surgery and --
3        **THE COURT:**  Well, with prostate cancer and bladder
4  cancer, it's unlikely they'll do that.
5        **MR. MILLS:**  Unlikely what?
6        **THE COURT:**  That they'll do a heart surgery on him if
7  he's in that bad a condition.
8        **MR. MILLS:**  Well, actually the bone is worse.  He's
9  not -- it is not in remission.  Here's the issue.
10       **THE COURT:**  Okay.  Well, wait -- okay.  Well, first
11 of all, I mean, I -- do we have doctors' letters in the file?
12       **MR. MILLS:**  Yes, sir.
13       **THE COURT:**  We do?  From whom?
14       **MR. MILLS:**  From his oncologist, from his
15 cardiologist --
16       **THE COURT:**  Wait a minute, wait a minute.
17       Yeah, okay, well, I'm trying to look here and find
18 all this.  All right.  Now, prostate cancer, I mean, what's his
19 Gleason in the prostate cancer?  Is it an advanced Gleason or
20 is it a 4 or 3 or what?
21       **MR. MILLS:**  I don't know the number but I don't think
22 it's aggressive enough to be the main problem right now.
23       **THE COURT:**  Okay.  Well, then it's the type of
24 prostate cancer that he might -- that he might outlive.
25       **MR. MILLS:**  Yes, sir.

1  **THE COURT:** So, okay, we knock the prostate cancer
2  off. A lot of people have prostate cancer and function and --
3  he's not taking any kind of hormone therapy for prostate
4  cancer, is he?
5  **MR. MILLS:** I don't specifically know what -- he's
6  not taking -- he is not taking hormone therapy for the prostate
7  cancer.
8  **THE COURT:** It's not advanced past the -- I mean, is
9  there any indication that the prostate cancer is outside the
10 prostate capsule, that it's gone into the lymph nodes or
11 anything of that nature?
12 **MR. MILLS:** No, your Honor.
13 **THE COURT:** Then it's contained.
14 **MR. MILLS:** To our knowledge --
15 **THE COURT:** Live long enough, everybody will probably
16 get it.
17 **MR. MILLS:** Yes, sir.
18 **THE COURT:** I mean, they all say that. I don't know
19 if that's true or not but, anyway, in his case, it's not
20 advanced. Okay. So we can knock off prostate cancer. That is
21 not a concern. Now, you said "bone cancer" but the doctor here
22 says "multiple myeloma" which, you know, is a type. Again,
23 what's the stage of the multiple myeloma? Some people live
24 with multiple myeloma for 20 years or longer.
25 **MR. MILLS:** I -- all I know is from this letter and

1  the letter three or four months ago from the same doctor is
2  that he has been taking chemotherapy.  He's in between sessions
3  of chemotherapy.  He's lost 40 pounds of muscle mass.  He --
4  here's the -- and so that's the status of -- it is not in
5  remission.  And that's the status of what I know about the --
6          **THE COURT:**  I didn't see anything in here about the
7  bladder cancer.
8          **MR. MILLS:**  I may not have even attached it to this
9  one.  It may have been the previous motion for continuance but
10 I think that it's like the prostate cancer.  I don't think that
11 it's going to have an effect on -- present effect on his
12 health.  I don't think -- it has not spread.
13         **THE COURT:**  And you say you have a cardiologist
14 treatment -- doctor's statement in here?
15         **MR. MILLS:**  Yes, your Honor.  I -- when I walked up
16 here, I didn't bring my notes so that I can --
17         **THE COURT:**  I see it now.
18         **MR. MILLS:**  All right.
19         **THE COURT:**  Okay.  So he's got syncopy.  He's got
20 progressive shortness of breath.  Hard to read this.  Okay.  So
21 there's no indication of any pedal edema or right -- that'd be
22 generally associated with right-heart failure.  He's not got
23 that.  No pulmonary edema that I can see.  So maybe there's no
24 left-heart failure going on.  Gosh, this is hard to read.
25         **MR. MILLS:**  I have some magnifying glasses if you'd

1  like to borrow them.

2           **THE COURT:** I may have to get a magnifying glass.
3  Well, he's got a history of bradycardia. Is that symptomatic
4  or nonsymptomatic, bradycardia, do you know?

5           **MR. SPEAKER:** Collapse.

6           **THE COURT:** All I see here is "History of
7  bradycardia." A lot of people have bradycardia. I mean, you
8  know, you can be well-conditioned and have bradycardia. Then
9  he's got a first-degree AV block -- first-degree AV block.
10 That is the less lethal of any of the heart blocks you have.
11 Second degree and third degree are more lethal heart blocks
12 than first degree. So that is rhythm. I mean, even though
13 it's a heart block, it's not one that's right away going to put
14 him over. There's no chest pain. He's had exertional dyspnea
15 for the past three years.

16          Now, here it says he denies syncopy or extreme light-
17 headedness and diabetic for the last 30 years. Has a history
18 of sinus bradycardia. He had A-Fib 15 years ago. Evidently
19 that was treated.

20          Okay. Well, I don't see anything about the bladder
21 or the prostate or even his ECGs or heart history to indicate
22 to me that there's any reason to continue the trial. Now, the
23 only question becomes the multiple myeloma. And even with his
24 coronary disease, his heart rate is regular. He's got regular
25 rhythm. His ventricle and atrial sounds are all normal.

1          So I don't find there's any reason to continue
2   anything regarding his heart.  So let's talk about the multiple
3   myeloma.
4          **MR. MILLS:**  If there would be any benefit in your
5   hearing -- either hearing any testimony by questions or asking
6   him yourself, I would be willing to have --
7          **THE COURT:**  Well, I think the only thing -- question
8   I've got is that multiple myeloma.  Is that going to interfere
9   -- let me go back here to read all this stuff.  How old is your
10  client?
11         **MR. MILLS:**  Seventy-five.
12         **THE COURT:**  Okay.  Where was that?  Okay.  Well, and
13  I'm looking at the urology clinics in north Texas, again,
14  related to this bladder cancer and I'm not finding anything.
15  He does have a Gleason 7.  It's a 3-plus-4 rather than a
16  4-plus-3.  So that means it's not probably as aggressive as a
17  4-plus-3.  And his tumor is a T2a which means it has not gone
18  outside the prostate.  Okay.
19         But then there's a comment by the urologist that his
20  -- multiple myeloma followed by his oncologist -- in remission
21  and this is dated 1/21/2016.
22         **THE COURT:**  Yes, Judge, it was, I guess, five months
23  before the most recent oncology doctor's report.
24         **THE COURT:**  I'm looking through that again.  Well, I
25  mean, what's your -- what are you asking for?  Because it says

```
 1  here, he just needs weekly treatments.
 2          MR. MILLS:  The issue -- may I address the Court?  I
 3  believe the issue is this.  I talked to the prosecutor.  He
 4  goes to work in the morning at a clinic in Lancaster.  He
 5  sleeps during the day during that time but he does see
 6  patients.  He goes to another office in Garland.  He drives
 7  himself.  He has two naps in the afternoon.  My concern is that
 8  based on interviews that I've had with him over the years
 9  literally -- it's kind of an old case -- is that he just
10  doesn't have the ability to come to court each day as trials
11  require, concentrate, aid me, aid himself because of the
12  fatigue that he has.  He's -- additionally, the treatments --
13          THE COURT:  Well, he's not taking any.  Right now
14  there's no chemotherapy going on because he -- they said he
15  can't tolerate it.  So I don't know if he'd even -- he's not
16  responding to that.
17          MR. MILLS:  Well, I was under the impression that it
18  would start again but I don't have that right in front of me.
19          THE COURT:  I don't know.  This is June when I saw
20  this.
21          MR. MILLS:  All right.
22          THE COURT:  But it says he -- because of his other
23  problems he has with his hypertension, coronary artery disease
24  and diabetes, Dr. Reddy says he's not going to be able to
25  tolerate the full treatment schedule.
```

1  **MR. MILLS:** But that's also the one, I believe, Judge, that says it's not in remission. So since he can't tolerate the treatment, he is --

4  **THE COURT:** I mean, I feel sorry for him. I mean, I don't like to see anybody suffer with multiple myeloma but I don't know -- what are you asking for? I mean, are you asking for an indefinite postponement until he dies in 15, 20 years if that's when it is or five years or what?

9  **MR. MILLS:** No. I'm asking for a continuance of at least several months so that he can -- we can find out if his -- if he's going to have to do chemo again and see if there can be anything to help with his heart blockage. Would it be possible for me to put on some testimony from him?

14  **THE COURT:** I'll let you do whatever you want to, Mr. Mills.

16  **MR. MILLS:** All right.

17  **THE COURT:** But let me hear from the Government first, Mr. Jackson.

19  **MR. JACKSON:** Yes, your Honor. The Court's well aware of the age of this case. There's no dispute that the Defendant is driving. He is treating patients. He is working. I think there's no dispute about the number of patients he sees and the hours he works. If he's well enough to do that, he's certainly well enough to come sit in a courtroom for a few hours.

```
 1          THE COURT:  How many patients does he see a week or a
 2   day?
 3          MR. JACKSON:  Your Honor, estimates -- I have been
 4   told he runs two clinics and I -- before I said anything to the
 5   Court, I would want to just confirm and make sure I'm giving
 6   the Court an accurate number --
 7          THE COURT:  Okay.
 8          MR. JACKSON:  -- but it's -- he's not saying one or
 9   two patients a day.  He's conducting a regular -- what I view
10   as a regular medical practice.  Our view is if he's well enough
11   to that, work full-time, he's well enough to sit for a couple
12   hours a day in a courtroom.  And I also just want to add for
13   the record the Court has reviewed the medical records there and
14   the Court, without going into detail but just for the record,
15   has medical expertise beyond just a typical jurist.  So I just
16   need to protect the record as we go up in --
17          THE COURT:  Oh, okay.
18          MR. JACKSON:  So --
19          THE COURT:  Yeah, okay.  Well, I'm not making medical
20   findings.  I'm just --
21          MR. JACKSON:  No but --
22          THE COURT:  -- confirmation as to what the record --
23   and for the record --
24          MR. JACKSON:  Right.
25          THE COURT:  -- medic and paramedic training.  So I
```

1  can -- I understand these concepts.
2           **MR. JACKSON:** I understand.
3           **THE COURT:** Okay.
4           **MR. JACKSON:** And we think, frankly -- with all due
5  respect to Mr. Mills, we think his client's strategy is to
6  postpone this case indefinitely. And the Government has
7  sincerely looked into this to see -- to make our own assessment
8  as to whether this was a legitimate medical need and our
9  conclusion is that it's not and he's just going to use this as
10 long as he can to postpone this trial.
11          **MR. MILLS:** Well, I don't think the doctor would say
12 it's not in remission and his life expectancy is at risk if it
13 was a sham.
14          **THE COURT:** (indiscernible) but, I mean, it's loaded
15 but, I mean, everyone at 75, life expectancy is limited. We're
16 all limited as we get older. So, I mean, that's just the way
17 life is and --
18          **MR. MILLS:** I know but it's worse -- the statistics
19 -- I know this because my sister just recently died of bone
20 cancer -- when you have multiple myeloma.
21          **THE COURT:** I understand.
22          **MR. MILLS:** Yeah. So the one thing that --
23          **THE COURT:** And I'm sympathetic to the doctor. I
24 don't like to see anybody have cancer or suffer from cancer or
25 anything.

1 **MR. MILLS:** I understand. One thing that he just --
2 Mr. Jackson just said was, "Several days -- several hours a
3 day." I mean, quite frankly, if we had a trial that was half a
4 day, physically based on what I know, I would think he could
5 probably do that. I never have had a trial like that but I
6 never have had this exact situation.

7 **THE COURT:** I don't know why Judge Crone couldn't if
8 she decided -- is this Judge Crone's case?

9 **MR. JACKSON:** Yes, your Honor.

10 **THE COURT:** You might -- I might make a
11 recommendation that his participation be limited. She might
12 say, "I'm not going to handle that" or -- I think I can make a
13 recommendation that there might be some limitations and -- of
14 what he has to do. No, I mean, nobody wants to -- the stress
15 of a trial is bad enough as it is and I understand that. It
16 doesn't help the health situation, you know. I don't know. I
17 mean, he continues to see people.

18 **MR. MILLS:** My client is asking me without making a
19 noise that he be able to testify and give some answers.

20 **THE COURT:** I'll hear him. Go ahead. Call him up.

21 **MR. MILLS:** Yes, sir.

22 Dr. Niamatali?

23 I'm going to be calling him for the -- for this
24 aspect, not just opening him up to full cross examination.

25 **THE COURT:** I'm not going to let -- I mean, just for

1  the aspect of his medical condition and what he's able to do
2  and --
3      **MR. SPEAKER:** May I have a moment, your Honor?
4      **THE COURT:** Yes, sir.
5      **THE CLERK:** Please go to the microphone.
6  Your Honor.
7      **THE COURT:** Yes, sir.
8      **MR. MILLS:** Let me see if I can just talk to Doctor
9  just for a moment and see if I can make a proffer of his
10 testimony.
11     **MR. JACKSON:** And I've informed Mr. Mills I have no
12 objection to a proffer.
13     **THE COURT:** Okay, all right. That's fine, sir.
14     When is this case set, Toya?
15     **(Counsel conferred with Defendant)**
16     **MR. MILLS:** May it please the Court?
17     **THE COURT:** Yes, sir.
18     **MR. MILLS:** Dr. Niamatali has said that his main
19 concern is the stress and the fact that he has had angina
20 attacks. He understands that he's -- doesn't have a favorable
21 prognosis as to the cancer.
22     **THE COURT:** Is this angina stable or unstable angina?
23     **MR. MILLS:** Unstable angina. Meaning random?
24     **THE COURT:** No, I didn't say that.
25     **MR. MILLS:** Okay. Well, then I'm not sure that I

1  know the difference.
2      **THE COURT:**  Ask him if it's stable or unstable.  He
3  knows what it is.
4      **(Counsel conferred with Defendant)**
5      **MR. MILLS:**  His response was, "Sudden collapse with
6  pain when under stress."
7      **THE COURT:**  Well, that didn't answer my question.  Is
8  it stable or unstable?  In other words, is it cured by rest?
9  Can he take nitroglycerin for it?  Does it go away or does
10  medication not help it?  Rest doesn't help it?  What?
11      **(Counsel conferred with Defendant)**
12      **MR. MILLS:**  He believes that it would be called
13  "unstable."
14      **THE COURT:**  Okay.  Does he take nitroglycerin for it?
15      **MR. MILLS:**  If someone's there to give it to him but
16  when it happens, he can't take it himself.
17      **THE COURT:**  Okay.  All right.  What doses is he
18  taking of nitroglycerin when he can take it?
19      **(Counsel conferred with Defendant)**
20      **MR. MILLS:**  Zero point zero four milligram tablets.
21      **THE COURT:**  Okay.
22      **MR. MILLS:**  But for the record of the Defendant, he
23  loudly stated he's never taken nitroglycerin.
24      **THE COURT:**  He said what?
25      **MR. MILLS:**  He said that -- he told me that he does

1  not take nitroglycerin, that he has 0.04 milligram tablets in
2  his refrigerator --
3          **MR. SPEAKER:**  And that he has never taken it.
4          **MR. MILLS:**  -- and that he has never taken it.
5          **THE COURT:**  Okay.  All right.  What else, Mr. Mills?
6  What else -- in the proffer, what else do you have?
7          **MR. MILLS:**  That's all we have on the proffer.
8          **THE COURT:**  All right.  Mr. -- let me hear from
9  Mr. Jackson now again.
10          **MR. JACKSON:**  We're opposed to this, your Honor.  I
11  think the Court can see exactly what the Defendant is doing
12  here.  His ability to work, treat patients and drive shows he
13  can clearly go to trial.  Trial is stressful for everyone but
14  there's no reason to continue this case yet again.
15          **THE COURT:**  All right.  I'm going to deny the
16  continuance but I'll make a recommendation -- nonbinding
17  recommendation to Judge Crone that she take this into
18  consideration and possibly limit the hours of trial for your
19  client, that it won't put him under too much undue stress.
20  Where's the trial -- is the trial going to be here or is it
21  going to be in Sherman?
22          **MR. MILLS:**  I don't specifically know.
23          **MR. JACKSON:**  The order says Plano, your Honor.
24          **THE COURT:**  Okay.  Well, in Plano.  Well, I won't
25  have to drive that far then.

1  Again, I'm sympathetic to his condition.  I
2 understand that multiple myeloma is an insidious disease but I
3 feel like what I'm seeing right here is that it's not going to
4 interfere with his ability to at least participate in the trial
5 right now.  And if that would change, if it would something new
6 that comes up that he really gets, you know -- starts spiking
7 on all of his markers and stuff and bed ridden and everything
8 like that, whatever may happen, then, you know, you'd have to
9 follow it up with a doctor's report and it'd have to be
10 something a little more than just one-paragraph letter from
11 Dr. Reddy although, I mean, I don't have any reason to believe
12 that he's not been upfront with the Court.  But it's going to
13 have to be a little more than that.
14  Again, I'm going to make a recommendation that Judge
15 Crone limit the trial to six hours a day.  Now, she may look at
16 me and shake her head and say, you're nuts.  I'm not going to
17 do that.  There's no way I'm going to limit the trial or she
18 may say, oh, well, yeah, I can do that.
19  **MR. MILLS:**  Well, we would -- first of all, we would
20 appreciate any request but we'd also appreciate a request of
21 less than six hours a day.
22  **THE COURT:**  I don't know if she can do that.  I mean,
23 she's got to get this -- how many -- long is this trial going
24 to take?
25  **MR. MILLS:**  I would have thought maybe three to five

1 days.

2 **THE COURT:** Oh, well --

3 **MR. MILLS:** What did --

4 **THE COURT:** Oh, I -- you know, I just -- I thought
5 this was going to be like month-long trial. I should have
6 asked that question first.

7 **MR. MILLS:** No.

8 **THE COURT:** Well, anyway, I'll try to accommodate any
9 way I can with my recommendation. Like I said, Judge Crone may
10 not do it. I don't think any of the ailments that he's got
11 here really interfere with his ability to sit and go to trial
12 in this case except -- and like I said, I'm sympathetic to his
13 problems with the myeloma and I know that does cause pain and
14 that it causes weakness and, you know, I only hope that, you
15 know, he'll have a long, long remission and be able to lead a
16 productive life.

17 So the motion is denied on that part but I will try
18 to limit the trial setting to six hours a day. Does the
19 Government have any objections to that, the six hours?

20 **MR. JACKSON:** No, your Honor.

21 **THE COURT:** So we only have to worry about Judge
22 Crone.

23 **THE CLERK:** He has a joint motion (indiscernible).

24 **THE COURT:** Oh, what -- okay. Well, how would Ms. --
25 is his wife also a doctor?

1   **MR. MILLS:**  No, she's not.

2   **THE COURT:**  Oh, okay.  All right.  I'll let

3   Mr. Burnham talk about that.  I don't know --

4       Mr. Burnham, how --

5   **MR. BURNHAM:**  Judge, we're --

6   **THE COURT:**  -- how would she be limited?  What's her

7   problem?

8   **MR. BURNHAM:**  We're going to withdraw our motion.

9   **THE COURT:**  All right, sir.  Very well.  Okay.

10      Very well.  Well, good luck to you-all.

11  **MR. MILLS:**  Thank you.

12  **THE COURT:**  We stand in recess on this matter.

13  **(This proceeding adjourned at 11:12 a.m.)**

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____     July 14, 2016_

**TONI HUDSON, TRANSCRIBER**